The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Justice Craig H.D. Armand presiding. Good afternoon, Counsel. Good afternoon, Your Honors. We'll call case number 4-21-0537, Eckerty v. Eastern Illinois Foodbank. Could Counsel for the Appellant please state their name for the record. Yes, my name is Timothy Deffitt. That's D as in David, E, F as in Frank, F again E-T. Thank you. For the Appellant. And Counsel for the Appellate, could you please state your name for the record. Good afternoon, Jessica Jackler for Defendant Appellee, Eastern Illinois Foodbank. All right, thank you. Mr. Deffitt, you may proceed. Thank you, Your Honor. May it please the Court, Counsel, Your Honors. I would like to ask the justices here if I could reserve a little bit of extra time of my 20 minutes for rebuttal so I can have more than five minutes. Is that possible if I reduce my argument time? I haven't been familiar with that request before. I'll just move on. Okay. All right. In this case, Your Honors, what we have are two main issues. One, the most important is that motion for summary judgment was granted against my client. In this case, it's a retaliatory discharge case arising from a alleged workers' compensation claim that was filed at the Workers' Compensation Commission. I want to briefly go over what I understand to be the standards of review. And the most important standard of review in this case, I believe, is for analyzing motion for summary judgment, which I understand to be a de novo review, allowing the justices to review the full record in total. In addition to that, there are a number of discovery orders that were leading up to the motion for summary judgment that the appellant has also put into issue. I briefly want to say I know normally speaking that the standard for discovery orders is an abuse of discretion. But there are some limited exceptions where especially there's a crucial issue in the case where there's a discovery order preventing the ascertainment of truth or substantially affecting a crucial issue in this case. And I would argue that some of these discovery orders were very crucial to combating the motion for summary judgment. In addition to that, I believe in limited circumstances that a discovery order can be reviewed de novo if it is an issue involved with an evidentiary privilege, which there's precedent for that in the Rita versus advocate care case, a 2002 Supreme Court case, R.E.D.A. In that case, there was an issue where the plaintiff in that case was arguing a patient-client confidentiality. And the Supreme Court found on appeal that even though that was a discovery order, there could be a de novo review of that. In this case... Counsel, did you even address the standard to review on the motions in your brief? I don't think I stated specifically what the... I think I did in my reply brief, actually, that I agreed that generally speaking, as counsel stated in their brief, that discovery orders are normally an abuse of discretion. Regarding the motions for summary judgment, I definitely stated that that was a de novo review. Okay. Does that answer your question fully? Yes, sir. Go ahead. Okay. So, in this case, I just briefly want to touch on the facts, very briefly. So, to really emphasize the fact that I believe there's a material issue of... a genuine issue of material fact in this case. So, the plaintiff was asserting that he had, in April 2618, cumulative trauma or what's also called a repetitive trauma injury from his work for the EIF, where he had been working for 13 years. He asserted during his testimony in this case that he had foot and hip injuries as a result of what he called repetitive motion, getting in and out of the forklift truck and rotating his hips. So, he had foot and hip injuries that he was asserting. The appellee asserts that they were not notified that there was any work injury. They were not notified that his medical treatment was related to work. Let's see if we can address that. On the 26th, when he left, did he inform anyone that he was leaving because of a work-related injury? Well, he didn't. He never left his job, but he was out of work on April 26, 2018. So, he texted his supervisor... Okay, wait a minute. Wait a minute. Maybe my question wasn't asked very well. He left his job on the 26th, correct? He went home. He was at a job. He left and went home, correct? I believe so. Maybe I'm dicing this up a little bit too closely. I'm just saying, what I'm emphasizing, he didn't abandon his job. He was told by a doctor... I'm just asking whether when he left work that day, did he say, hey, listen, I got to go home because of my injury? Yes, he texted his supervisor, I believe... On the 26th. Sorry, on April 27th. He saw the doctor on April 26, 2018. On the 27th, did he tell anybody from the food bank that I left because of a work-related injury? He didn't use the words work-related injury. He texted his... He didn't say I was hurt on the job, or I'm suffering some problems because of my work, or anything that combines the words work and injury in any form in any sentence. He has testified that he did tell them he had a work injury, but I don't have anything in a text, and they dispute that that was ever told to them. So I don't have a smoking gun stating in writing that he said I have a work injury. Well, if you say he texted it, then he'd have his text, right? Well, he has text informing his supervisor that he was seeing a doctor, his hip was hurting, that he needed surgery following up, but there's nothing in there saying I have a work accident on such and such a day. To be specific, if this were an injury which had occurred at home, he wouldn't be entitled to any workers' compensation, would he? No, that's correct. So doesn't he need to then specify and inform his employer, even if they see him limping around, what the source of this injury was, as opposed to, I was changing a light bulb and fell at home, or whatever. It was instead something that was connected to work. It was a work-related injury in some fashion. What I've found, not to get too deep in the weeds, but what I've found in practicing in this area of law and also work comp is most petitioners and even employers don't necessarily understand what repetitive trauma is. When a layperson initially comes to a doctor, they end up talking about their job, and then what happens is a doctor may eventually put in the records, this guy told me he does XYZ repetitively every day for his work. And then eventually, in a case like this, a doctor usually gives a deposition, and then it goes to trial, and the judge decides for sure if it's work-related. So that's the legal standard. We're just talking about the facts, whether he says, I've hurt myself because of my work. Did he tell anybody at work that that happened? I don't think he used the word accident, but what I'm saying is... Okay, but that wasn't even the question. Maybe my questions are just not sufficiently articulate, and I apologize. No, it's my fault. I'm sorry. Please, please specify one more time. Did he tell anybody at work during any of the conferences that they had, both in person or by text, that I'm getting this medical care or I have these injuries because of what's happened to me at work? He testified that he told Dr. Grambert he could not walk on his foot. He injured his hip. That's Dr. Grambert. I'm asking about the employer. Your Honor, what I'm going to say is going to tie into that, if you could bear with me for one second.  Okay, please just bear with me. I'm sorry to interrupt you. So he testified he told Dr. Grambert he was getting up and down in the fork truck, and his left hip was rotating, and he was having a problem with repetitive motion. That's why I was injured. Those records are being faxed to the employer. Now, I don't think the petitioner ever said in direct terms, I have a work accident. He told them in a text. He certainly never said that in a text that I've seen, but he did tell them. Let me ask these questions, counsel. Would it be correct that the employer would not be liable for any workers' compensation payments for an accident that occurred at home? Is that right? A home accident? Yes. Yes, there's no work out for a home accident. So the retaliatory discharge tort is based upon a claim that a worker who sought workers' compensation coverage is being punished for having done so by his employer. Now, I suppose my question is, doesn't that require a mental state, knowledge or intent, but at least knowledge on behalf of the employer, that the injury that the worker suffered was compensable? Namely, it was subject to having workers' compensation paid out. And it seems to me the retaliatory discharge tort wouldn't apply if the employer had no reason to think that this was a work-related injury as opposed to a home-related injury. In other words, if the burden, it seems to me, is on the plaintiff to demonstrate the employer knew that this was work-related injury, and therefore when workers' compensation was sought, he was being punished for the retaliatory discharge for pursuing it. And another point is, would you agree that the employer could have fired him if he couldn't work anymore because of a home-related injury? Wouldn't that be correct? Okay. So in answer to that, Your Honor, I've been practicing work comp for over 25 years. I have never had an employer say, this repetitive trauma case is compensable. Never. Not once. Counsel, answer my questions, please, directly without the preface. Is it correct that there is no basis for a retaliatory discharge claim if an employee hurt himself at home? Yes, I've already answered that was yes. So then don't you have to show knowledge on behalf of the employer that this was a work-related injury before retaliatory discharge can lie? He was exercising his rights to medical treatment, and I do believe he did tell them that he had a work-related injury, but I don't have a text or a smoking gun, but he's having meetings, and he's had three prior injuries, including a previous repetitive trauma injury where they did do an accident report. Okay. And in each of those instances, he notified them of his injury. They were put on notice at the time of the injury, and there was no question about the fact that he got injured there, nor was there any evidence that they took any negative action against him. Would those all be true statements? In those cases, yes, I don't believe they took negative action, but he was released back to work within about a week, so he didn't have to take any substantial time off, and what we're asking here really is, does my client have to prove up a worker's compensation claim before he is allowed to assert a retaliatory discharge? And we know the law states that you don't even have to file an application for adjustment of claim to assert a retaliatory discharge case based on an accident. And in fact, he didn't do that until six weeks after he was released, correct? I'm sorry, I missed your question, Your Honor. He didn't even file a claim until six weeks after he was released, correct? He asserted he was injured and asked for comp, but he did not file an application for adjustment of claim. Apparently, my questions are not sufficiently articulate. If you were asking a witness on the stand, this is the point where you would have said, excuse me, but this calls for a yes or no answer. Did he file a claim at any point in time before six weeks after he was released? Your Honor, I'm not trying to be evasive, but people assert... If they're either yes or no, then don't be evasive. No, I disagree. It's not a yes or no answer. Did he file a claim? Counsel, just a second. Did he, I'll do this as simply as I can. Did he file a worker's comp claim at any point in time before six weeks after he was released? There's an application of adjustment of claim that is not required to assert a claim for worker's comp. So I already answered he did not file an application for adjustment of claim. That is correct. He talked to his attorney and his attorney was not available to go ahead and meet with him. Now, asserting a claim for worker's compensation is very different. And the defendant has to do a form 45. All right, I'm done. And then it requires a report it. Go ahead. Counsel, can I be heard? Yes. Okay, I want to make sure my, I had trouble with my sound a moment ago. So I think for me, I'd like to hear you make your best case that the employer had some type of notice and that the discharge was causal related. Okay. Here I'm really focusing in on a material issue of fact here. So what we have here. Number one, if we go into the discovery orders a little bit, is we have a claim of privilege for his supervisor under the control group. And they're not in the control group that's not accurate law. We have a claim of privilege for the other three witnesses that were in the case, including the CEO of the company. They all state that we don't know if we talked to each other about light duty. We don't know if we talked to each other about whether he had a work comp claim. We don't know what the leave policy is here. Yes, we do have an accommodation policy, but we've never issued light duty before. And then I believe there's an issue of fact regarding whether he actually communicated to them that he had a workers compensation injury. And he stated in his lay person's terms that he said, I had repetitive trauma. I told that to my supervisor, I informed them to the medical and the medical records themselves like Dr. I believe that I don't want to focus too much on the discovery, although that definitely hampered the petition in this case, because I believe there would be communications. And also, I was not allowed to ask very many questions during the deposition testimony to talk about the communication between the other side. So to me, I believe he asserted at work, a right under the word compact, mainly, I want to get my medical treatment. And he was replaced by Josh Strickland within two weeks of him informing them that he had this injury. They said he maybe he could come back. They never allowed him to come back. His workers compensation claim is still pending. It's still being fought the commission as far as I know, it hasn't gone to trial yet and depositions have gone forward of the treaters, but that just shows you how vociferous these cases are in general, I realized the difficulty and I'm not trying to dismiss this point at all. I agree that it's very difficult. I mean if he stopped his toe, or something fell on his toe at work. I know that's very clean. I know it's super clean and we all find but repetitive trauma I always think is a very messy issue, and I feel like if you look at the totality of the evidence here even though the petitioner was not allowed to get the evidence he wanted a CEO regardless of whether there's an issue of him being a 206 a or not. He said the buck stops here with me. I have the full power to hire fire. He said he didn't review the personnel files, he didn't talk to his supervisors about what was going on. He didn't review the medical, he didn't review the light duty. He didn't know what injuries are being asserted. This was all at the time of his deposition. So I feel like there's a huge material effect with my client was told just move on because of his health issues, he testified that he talked about repetitive motion. But I think it's an unfair standard to say he has to prove his work injuries are compensable because only the commission or settlement contract can decide that he can't decide that in the context of a discharge case. I'm sorry, I hope I hope I'm addressing you properly, Your Honor. Is there a follow up. Great Council you got less than two minutes. Thank you. In summary, very quickly I feel like the defense testimony in this case is very inconsistent with each other. And I believe that there was there should be a de novo standard applied to the discovery orders, because there's an assertion of privilege on the chair for all these employees. There was also a motion where every single document was ruled to be privileged so when that rule of show causes brought the, the, the appellant was not able to see any of those documents, and therefore I think that under convincing mosaic approach, especially with the disputes on both sides. I believe that summary judgment should not have been granted. Yes, Your Honor. Thank you. Thank you counsel you have an opportunity on rebuttal counselor for the appellate. May I please the court and opposing counsel, my name is Jessica Jackler and I represent defendant appellee Eastern Illinois food bank. This matter concerns two main issues which I'll separately address the first issue is whether plaintiff was wrongfully terminated and retaliation for exercising rights under the Illinois workers compensation act, which I'll refer to as the act. The second issue is whether the trial court properly acted within its discretion in denying for discovery motions brought by plaintiff prior to ruling in favor of defendant on its motion for summary judgment. As to the first issue, the record has firmly established that plaintiff was not terminated in retaliation for exercising rights under the act. This is not a workers compensation case, nor is it a disability discrimination case under the ADA. The complaint only included one cause of action for retaliatory discharge, and I raised this because opposing counsel has blurred the lines between these very different types of cases are retaliatory discharge case is not concerned with the medical details of an injury. It is also a relevant to a retaliatory discharge case, whether the employer offered light duty, or if it should have done so. It is well established that to succeed on a retaliatory discharge case plaintiff must prove three things. Number one that he was an employee of defendant before at the time he suffered a work related injury. Number two, that he exercised rights under the act in connection with said injury. And number three, that his termination of employment was causally connected to exercising rights under the act. And here it's undisputed that defendant had no knowledge of any alleged work related accident or injury by plaintiff prior to making the decision to terminate plaintiff did not assert any rights under the act prior to his termination. And the defendant terminated plaintiff for valid non retaliatory reasons, unconnected to any alleged exercise of rights under the act. First, it is clear from the record that defendant had no knowledge plaintiff even experienced a work related accident or injury prior to his termination. Not one of the persons responsible for making plaintiff's termination decision had any knowledge that plaintiff experienced a work related injury. Because defendant lacked knowledge of any work related accident or injury. It cannot be shown that when it made a decision to terminate plaintiff that it was motivated by the existence of an accident or injury, or that it was motivated by plaintiff's intent to exercise rights under the act related to any such accident or injury. Plaintiff argues that he had a work related accident on April 26 2018 that he informed his supervisors of it, then asserted a workers compensation claim against defendant, and even tried to return to work all before he was terminated. But not one of these statements are supported by the record. In fact plaintiff's brief omits any record citations to these alleged facts because they simply do not exist. Rather, the record clearly demonstrates that plaintiff never reported in April 26 2018 work accident to his supervisors. He never asserted a workers compensation claim against defendants prior to his termination, and he never returned to work prior to his termination. Plaintiff also argues that to prove retaliatory discharge, he needed to only show that he sought medical attention for his injuries. However, these arguments are misguided, and so are the case laws cited in his brief, because those involve workers who had a known injury witnessed by the employer, or that were immediately reported to the employer. In our case, even if plaintiff sought medical attention for his health issues prior to his termination, that does not impute knowledge by the defendant that the medical attention was because of a work related injury. And here the record confirms that there are no facts or evidence demonstrating that plaintiff experienced a work accident or injury at work. There is no evidence here that the alleged accident or injury took place in the presence of any employee of defendant, or that plaintiff reported any such accident or injury to anyone at defendant prior to his termination. No worries there. Yes, I'd like to ask a question, just sort of on these points is sure. What's your response to counsel's argument that the employer could extrapolate from the meetings and discussions with the plaintiff that in fact this was like their repetitive trauma what's, what's the best evidence for that type of argument putting you in the plane of shoes. Sure, your honor. Well, there is no evidence in the testimony or in the records that plaintiff ever mentioned the words repetitive motion or mentioned any work related accident or injury during any one of those meetings with any of his supervisors or management of or the reason for his leave of absent was because of a work related accident or injury, and there's nothing in the record to support that anyone had any knowledge of that, including any alleged repetitive motion discussions which did not occur and are not in the record. Returning to my argument plaintiff has not and cannot show actual evidence, suggesting that anyone involved in the decision to terminate him even knew about an alleged work related accident or injury, or that he exercised or intended to exercise any rights under the act prior to his termination. As to the second element of his claim, there is no dispute here that plaintiff did not file his workers compensation claim until approximately one month to six weeks after he was terminated. It is also undisputed in this case that plaintiff never exercised any right afforded to him under the act before his employment was terminated. Nor did plaintiff report the accident immediately after it occurred like he had with three prior workplace accidents with defendant, and he did not seek any payment of any medical bills or lost wage benefits through workers compensation prior to his termination. Instead plaintiff admitted at his deposition that he applied for workers compensation benefits and filed his workers compensation claim against defendant about a month after the effective date of his termination. Plaintiff also admitted at his deposition that he never reported a workplace accident to anyone at defendant prior to his termination. He specifically was asked, did you ever report a workplace accident in which you injured your foot to anyone at the food bank to which he answered no. He was also asked, did you report to anyone at the food bank that your surgeries was in connection to any April 26, 2018 workplace accident or injury to which he responded no. These admissions by plaintiff together with defendants evidence prove that plaintiff did not give notice of any exercise of rights or intent to exercise rights under the act, and thus he cannot establish the second element of a retaliatory discharge claim. Lastly, plaintiff cannot prove the third element that his discharge was causally connected to his exercise of rights under the act. He cannot prove this last element because to begin with defendant lacked any knowledge of any exercise of rights by plaintiff under the act prior to the decision to terminate him, which I previously discussed. Because defendant has demonstrated a valid non-retaliatory reason for his termination. A plaintiff cannot succeed on a claim for retaliatory discharge if the employer terminated the employee for a valid non-retaliatory reason. And here the record supports that plaintiff was terminated because of his inability to work and provide defendant with a return to work date, even after his paid leave had been exhausted and defendant had provided him with an approximate three month long leave of absence. The record shows that plaintiff's former position of operations associate is vital to defendants food bank operations and position could not remain open indefinitely. Plaintiff even admitted at his deposition that his inability to work, his inability to return to work, and because defendant could not keep his job open after he ran out of sick and vacation time were the real reasons for his termination. Plaintiff was also asked to reapply post termination if he was medically cleared to perform his job. For all of these reasons plaintiff has failed to prove the essential elements of retaliatory discharge claim and therefore the trial court correctly granted summary judgment and the order granting summary judgment should be affirmed. The second issue before the court is whether the trial court acted within its discretion when it denied four separate discovery motions brought by plaintiff prior to granting summary judgment. Not one of these motions impacted plaintiff's ability to oppose the summary judgment motion, nor did it prevent plaintiff from creating a fact question related to the motion for summary judgment. The abuse of discretion standard is the correct standard here and the de novo standard was not raised in plaintiff's brief and should not be, I think it's improperly brought at this time during oral argument. The first motion that I will address was the motion to compel the depositions of plaintiffs, excuse me, depositions of defendants witnesses on a faster timeline. The denial of this motion did not impact plaintiff's ability to defend the summary judgment motion in any way. All the depositions were completed prior to the summary judgment being filed. Plaintiff was not at all prejudiced by the denial of this motion. The second motion denied was plaintiff's motion to strike and compel, which was brought for the sole purpose of seeking the production of defendants privileged documents that were identified on its privilege law. None of the discovery sought in this motion goes to the retaliatory discharge elements discussed earlier. It only sought 20 pages of documents that were identified on defendants privilege law that were post termination privileged communications between defendant and its EPL insurance carrier about this lawsuit. And other documents with its workers compensation insurance carrier about the separate workers compensation case, some of which post dated the termination of plaintiff by over a year. Plaintiff believed that nurse case manager notes or the form 45 document were withheld in these records, which was inaccurate as those records were produced in discovery and have been made part of this record. This motion was also improperly brought because no 201k conference was conducted prior to plaintiff bringing the motion. The motion was fully briefed and the trial court denied the motion and in its ruling the trial court explained that plaintiff failed to comply with rule 201k and correctly found that Supreme Court rules are not suggestions, and they have the force of law. And the presumption must be that they will be obeyed and enforced as written. So, as such, the trial court was within its discretion to deny the motion because of plaintiff's failure to comply with applicable court rules, and this ruling should be affirmed. The third discovery motion denied by the trial court was plaintiff's motion for protective order, which sought a protective order and joining defendants counsel for making objections at depositions and or it saw an order admonishing defendants counsel. It did actually not seek any discovery in connection with this case. The motion failed to cite to any specific objection testimony or instances in which an objection supposedly interfered with the witnesses ability to answer or how it would have impacted plaintiff's ability to defend the summary judgment motion motion. Importantly, none of the objections resulted in an instruction not to answer questions at the deposition. The witness answered every question he was asked the basis for relief sought appeared personal and punitive rather than serving any discovery purpose. Plaintiff did not file a reply brief to his motion. The trial court denied the motion and in relevant part reason that while the deposition about which he complained contained a number of objections. It did not agree with plaintiff's contention that the objections were speaking objections that improperly coach the witness. The trial court acted within his discretion to deny this motion, which did not even seek any discovery associated with plaintiff's retaliatory discharge claim. It merely sought to punish defendants counsel. As such, the trial court's ruling here should be affirmed. The fourth and final discovery motion by the trial court was plaintiff's motion for rule to show cause against the third party am trust North America, which is defendants workers compensation. Insurance carrier defendant was not a party to that motion, but I will still address it for this court. The motion alleged that am trust wrongfully withheld records based on privilege and did not produce plaintiff's entire workers compensation file. Am trust denied that it wrongfully withheld any records based on privilege. It produced almost 250 pages of records, along with a privilege log of materials that were withheld based on legal privilege comprised mostly of correspondence between am trust and its legal counsel. Prior to the hearing am trust tendered all 195 pages it withheld based on privilege to the trial court for an in camera inspection. After the hearing at which all parties made their arguments, and after the trial courts in camera inspection of the 195 pages of privileged records, the trial court denied the motion and found that the documents were properly withheld by am trust based on privilege. Because they were mostly correspondence between am trust and its attorneys regarding the defense of plaintiff separate workers compensation case, as well as reports prepared in anticipation of that separate lawsuit. It is also undisputed that am trust as the workers compensation insurance carrier was not even involved until after plaintiff's termination from defendant because he did not pursue any workers compensation claim until about a month after he was terminated. The trial court also denied this motion because the defendants were not, excuse me, the documents were not relevant to his retaliatory discharge claim. They post dated plaintiff's termination and did not discuss the reason for termination. There were no admissions by defendant included in the records, and there were no statements regarding any treatment of any of plaintiff's medical conditions contained in those records. Therefore, the trial court acted within its discretion in denying this motion, and the ruling should be affirmed. On behalf of my client Eastern Illinois food bank. We ask that you affirm all of the trial courts rulings that issue on this appeal in their entirety, and we thank you for your time. Thank you, counsel. Mr. David rebuttal. Yes, briefly, your honors. Thank you for listening to me today. Thank you, counsel. I hope everyone's doing well in this crazy world right now. Briefly, I just want to touch on a couple of things. Before I talked about the convincing mosaic and I want to emphasize that again because rarely is there a smoking gun in these cases, I do want to say one thing very specifically. They keep harping on the leave policy. Not one employee that I deposed, including the CEO could tell me what the leave policy was, how my clients leave dates were calculated, and when that started. In addition, he repeatedly asked for help for light duty work and counsel has misstated the law. If you do ask for light duty, it can be part of retaliatory discharge motive. If that is not providing the context of a work comp case. In addition to that, I'm sorry, hold on one second here. The Henthorne case specifically mentions that you don't have to have filed a workers compensation claim meeting an application for adjustment of claim. And that's dealt with specifically in Henthorne versus Rollins in 1988 Supreme Court case, because many cases in the workers compensation context are actually settled and were settled for years without ever even filing an application for adjustment. So when someone gives notice of an injury to the insurance company, and the employer is supposed to fill out a form 45, which does not trigger the filing of an application for adjustment of claim, it's actually a requirement under the law that they do that. The form 45 was not provided in this case until all depositions were done, and Antrust provided it, not the defense so they never voluntarily gave it to me, even though it's allegedly something that's filed with the workers compensation commission. So I have a question. The public court is very differential to the trial court with regard to issues of discovery arising at the trial level. You heard counsel make reference to the fact that the trial court here commented that you never pursued discovery problem, pursuant to Illinois Rule 201k, and that the trial court so commented in rejecting your arguments. Is she right? And why, if that's correct, why didn't you pursue 201k? Okay, no she's not right and since I only have five minutes for rebuttal I can't respond to all the discovery issues but I will directly respond to this. We had a contentious deposition, we talked during the deposition about all the discovery issues, very specifically because it occurred during the deposition, I talked to her that same day. So, I disagree that there never was a 201k. And in fact we talked about it on zoom and I talked about it during the deposition of the employee. So that is not a correct characterization that there was never a 201k. So the trial court was mistaken when it's so declared? Yes. Okay, go ahead. That's all I have your honor so I know you're very busy, I appreciate everyone's time and I hope everyone's healthy and well. All right. Thank you, counsel. The court will take this matter under advisement. Court stands in recess.